Eastern Dis.
*June*, 1834.

FLOWER
*vs.*
MILLAUDON.

Where the Supreme Court are not satisfied with the verdict of the jury and judgment thereon after an examination of the evidence, the cause will be remanded for a new trial.

Where one of several defendants made no answer and no judgment by default was taken against him, although there was a general verdict and judgment for the defendants, he will not be considered as before the court, and the judgment as to him will not be disturbed, in remanding the case for a new trial.

---

## FLOWER *vs.* MILLAUDON.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

Where a third person stipulates with a commercial firm, to advance a certain sum in cash or by endorsement for its support and credit, on which he is to be allowed ten per cent. interest per annum, and one third of the profits for a term of years, at the end of which this sum is to be re-imbursed, he will not be considered as a partner, but as having made a loan to the firm.

When it is stipulated between plaintiff and defendant, that the latter is to receive ten per cent. per annum interest on his advances to, and one third

Eastern Dis
*June* 1834.

FLOWER
*vs.*
MILLAUDON.

of the profits in the mercantile firm of the former, the contract will be declared usurious, and no part of the interest and profits can be recovered.

The approval of accounts rendered in the course of business, does not prevent the party from showing there are errors in them on a final settlement.

William Flower, a member of the firm of W. & D. Flower alleges that said firm becoming embarrassed in business, about the 19th June, 1822, entered into a written agreement with the defendant, by which the latter was to advance said firm the sum of twenty thousand dollars, with interest at ten per cent. per annum, to pay off their old engagements, which sum was to be paid in cash or in endorsements of the said W. & D. Flower's notes of accommodation, and re-imbursable at the end of three years.

A further agreement was entered into between the plaintiffs Wm. Flower, David Flower and David Griffith, all residing in New-Orleans, to take effect the 1st July, 1822, by which the two latter were to carry on the commission business and the former was to retire to West Feliciana, and from thence to aid and enlarge the business of their establishment in New-Orleans, all in his power; and that there should be allowed to Laurent Millaudon, as a compensation and in consideration of an advance of twenty thousand dollars, lent by him for the liquidation of the concern of W. & D. Flower, and for the help of the new one, *one third* of the net profits, one thousand dollars of which to be paid the first of July, each year, and the remainder passed to his credit. &c., as capital stock, bearing six per cent. interest until the close of the three years. The account opened in the new books under the denomination of "old books," to be balanced every 1st of July; and copy of this agreement to be furnished to Millaudon, &c. The plaintiff alleges that he continued his aid to said firm with funds and his credit, after his retirement to the country from time to time, until its expiration in July, 1825; that in the meantime there were various transactions between him and the defendant to considerable extent; and that it was not until March, 1827, that he could

get an account rendered by the defendant, to ascertain how his affairs stood; and that the account rendered at that time of the transactions between him and the firm of W. & D. Flower were defective, and omitted the transactions between that concern, and the said Millaudon for the two first years, which has not yet been furnished.

That in the account rendered there was a much larger balance against him, than he anticipated; and supposing the account to be made good in faith, and also correct, he broke up his establishment in Feliciana, and brought twenty-six slaves, which had previously been mortgaged to defendant, to the city, for the purpose of being sold to pay off said balance.   That he left them with his brother D. Flower and Millaudon, and returned to the country; and soon after his brother sold them to defendant for eleven thousand and six hundred dollars as a cash price, with which he was to be credited, but no act of sale was passed. That at the instance of the defendant, and to avoid a judicial mortgage against the firm of W. & D. Flower, when he returned, he was induced to let Millaudon have said slaves in satisfaction of his mortgage, which was prior to the judicial mortgage, and to make conveyances to such persons as would purchase them of him; that it was expressly understood that Millaudon was to take said slaves subject to all incumbrances, for the price of eleven thousand and six hundred dollars, as so much in satisfaction of his mortgage; but that he refused to take a conveyance from the plaintiff, in pursuance of said agreement, but insisted and persisted in having said slaves sold by the sheriff, under an order of seizure obtained on his mortgage, and bought them in at reduced prices; by which he (plaintiff) has sustained a clear loss and damage of five thousand dollars; that said defendant has been guilty of great fraud, in keeping and rendering his accounts to the said firm, which has been recently found out, &c.   He further charges that by false representations of the state of the accounts between said defendant and the firm of W. & D. Flower, he was induced to believe Millaudon had advanced the full sum of twenty thousand dollars to said firm as stipu-

lated, and accordingly in March, 1827, mortgaged all his property in Feliciana (the aforesaid negroes included) to the amount of forty thousand dollars, to secure the payment of any amount that might be owing by said firm; but he avers that any debt that was owing said firm, has since been paid off; and that on a fair and equitable settlement of accounts between said defendant and the *new firm*, and the said firm of W. & D. Flower, and those between the plaintiff and the defendant, that the latter will stand indebted to him (who is proprietor of all the rights and interests of the old firm by assignment) in the sum of twelve thousand dollars. He prays that Millaudon be required to render a detailed account of all his transactions with said firms, and that he have judgment against him for twelve thousand dollars, or so much as shall be found due; and that the mortgage given by the plaintiff on his slaves and all his property to secure the balance which Millaudon fraudulently and falsely represented to be due to him, be cancelled; and in order to effect a final settlement of all the accounts of the old and new firms of W. & D. Flower, that D. Flower and D. Griffith, as well as L. Millaudon, be cited to appear; and he charges that D. Flower and D. Griffith, on a fair settlement, are endebted to him in the sum of five thousand dollars, on account of the old and new concern of W. & D. Flower, for which he also prays judgment.

Millaudon pleaded a general denial; admitted he had had pecuniary transactions with the plaintiff of the character alluded to, but that upon a fair settlement of the accounts arising from those transactions, there was a balance due him according to four accounts current and a mortgage annexed, of twenty-seven thousand eight hundred and seven dollars and eighty-four cents, for which he prayed judgment in reconvention.

D. Flower and D. Griffith, who were impleaded with the defendant, put in separate answers containing a general denial, &c.

The testimony taken and read on the trial, was principally directed to the state of the accounts between the par-

ties, and to the manner and conduct of the defendant, in relation to the mortgage and sale of the plaintiff's slaves.

It appeared among the transactions, that Millaudon had loaned or given a note on V. Nolte & Co., for ten thousand dollars, having two years to run, for which he charged the plaintiff eleven thousand and two hundred dollars. The excess of interest thus charged was objected to as illegal and usurious.

A bill of exception was taken to the admission of D. Griffith, as a witness for the plaintiff on the ground that he was a partner of the firm of W. & D. Flower; but he was admitted by the court as competent to prove that the defendant Millaudon had received funds of the *old firm*, provided the transaction be not connected with the new one, &c.

The defendant's counsel objected to the commercial books of W. & D. Flower, from July 1st, 1822, to July, 1825, being admitted in evidence, because they were the books of W. & D. Flower, and there was no evidence on record to establish any partnership between him and the said W. & D. Flower, and that consequently they were not evidence against him, they being the books of the plaintiff, and his co-partners, who are all interested in the event of the suit; the court sustained the objection, and the plaintiff excepted.

The cause was tried by a special jury of merchants, who returned a verdict for the defendant Millaudon, for the amount of his claim in reconvention, and a general verdict for the defendants D. Flower and D. Griffith.

The plaintiff moved for a new trial on the following grounds :

1. The court erred in taking the question of partnership from the jury, by refusing to admit the books of W. & D. Flower, thereby prejudging the verdict of the jury on that point.

2. The verdict is contrary to law and evidence, either in not finding a partnership, or in not striking off all the interest and profits, the contract being usurious.

3. On the loan transaction, plaintiff proved sufficient to put Millaudon on proof of consideration of the note of

eleven thousand dollars, not having done so the consideration should be presumed usurious, and the interest stricken out.

4. All the interest should have been stricken out of the account.

5. The exclusion of the books of W. & D. Flower, prevented any evidence against D. Flower and D. Griffith; and as to them a judgment of non-suit should have been entered.

The district judge overruled the motion for a new trial and gave judgment confirming the verdict. The plaintiff appealed.

*Hennen and Worthington,* for the plaintiff, contended that the District Court erred in refusing a new trial on the grounds, and for the reasons stated in the application.

2. Partnership or no partnership, is a question for a jury, and there was sufficient evidence of partnership offered to entitle plaintiff to have that point decided by the jury. The court by excluding the books of the new concern, prejudged the question of partnership, and precluded the jury from deciding on that question.

3. Under the agreements No. 1 and 2, and the accepting of one third of the profits, L. Millaudon, David Flower, and David Griffith, were the partners of the new concern of W. & D. Flower, from 1st of July, 1822, to 1st of July, 1825.

4. L. Millaudon, as partner of the new concern of W. & D. Flower, is bound to plaintiff in his own right as partner of the old concern, and as assignee of D. Flower's interest therein for the amount of debt due by the new concern to the old concern, and the books of the new concern are proof of the extent of that debt.

5. Said Millaudon is in like manner liable to plaintiff for any debts paid by him as nominal partner in the new concern.

6. The plaintiff having in his petition impeached the consideration of the eleven thousand dollar note, and imputed usury, and alleged that the only consideration given

for it was the Nolte note of ten thousand dollars; and L. Millaudon's books corresponding therewith in not showing any other consideration, Millaudon was bound to show other or further consideration of said note, not having done so, plaintiff's note for eleven thousand dollars, and all the interest theron should be struck out of the account, and be replaced by the true consideration, viz: ten thousand dollars without interest.

7. Or if not a partnership, the original contract was a usurious loan, and interests and profits must be struck out of the accounts and claims of the defendant.

*Slidell,* for the defendant.

1. The agreement between W. & D. Flower and L. Millaudon does not as between themselves create a partnership, although it may constitute them partners and make them responsible as such in relation to third parties. The allowance of one third of the profits considered as the price paid to Millaudon for the use of his name and credit, made him responsible to the full extent of his property for the engagements of the house of W. & D. Flower, and as he was to be allowed no commission for his endorsements, he might under that agreement have well received no other compensation. 4 *La. Rep.* 139.

2. Millaudon not being a party to the agreement between W. & D. Flower, and Griffith, cannot be bound by it; there is no evidence to connect it with him, except the fact of his being furnished with a copy and having corrected the draft of it; this he might well do, because as he had made himself by his original agreement responsible for all the engagements of the house, he had a positive and direct interest in knowing the terms upon which the business was to be conducted.

3. William Flower was a partner of the new concern. This is declared by the act of partnership itself. He cannot repudiate his own written stipulation to that effect. The circumstance that he was not to receive a

share of the profits of the new concern does not change his character. He received a full equivalent in another form, the winding up and liquidation of the old concern, the collection of its debts without contributing in any way to the expense of the same, on all sums so collected he was to be allowed an interest of ten per cent. to be paid him annually, the principal to form a portion of the capital of the concern. It is not of the essence of partnership that the advantages of one partner should be a division of profits in the form of money; they may exist in any other form, and may be regulated in any way the partners may stipulate. *C. C.* 2782, 2783. *Old Code p.* 388, *art.* 1, 2, 4.

4. The court did not err in refusing to permit the books of W. & D. Flower to go to the jury until sufficient evidence had been produced to show partnership; no evidence had been given to establish the existence of a partnership. Even if the partnership had been proved, the books could not have been admitted as evidence against Millaudon.

5. The contract to receive ten per cent. interest on monies advanced, and one third of the profits was not usurious. The credit of Millaudon and use of his name as endorser was a sufficient consideration for the stipulation of a share in the profits, although not liable for losses to the partners of the house, he was liable to third persons for the debts of the firm to the whole extent of his fortune. *Cur. Philip,* 6 *cap: Intereses, p.* 359, *No.* 50.

6. If there was any thing usurious in the original contract it has been purged by the repeated settlement of accounts made by Flower, with a full knowledge of all the circumstance of the case. 4 *La. Rep.* 542, 2 *La. Rep.* 430.

7. The finding of the jury where no bill of exception is taken to the charge of the judge will be sustained by the court, unless manifestly illegal. It should be the more decisive in this case, as by consent of parties it was refered to a special jury composed of the most intelligent merchants of New-Orleans, who rendered the verdict after a protracted and laborious investigation which occupied several days.

BULLARD, J., delivered the opinion of the court.

This case involves the examination of complicated transactions between the parties for a series of years, some of which relate to the late firm of **W. & D. Flower**, under a special contract with the defendant, and some to the plaintiff personally. The court is called on in the first place to give a construction to the contract under which the defendant made certain advances to the late firm. It is contended by the plaintiff's counsel, first, that Millaudon made himself a partner of the house of W. & D. Flower, by stipulating for a portion of the profits of the concern, not only in relation to third persons dealing with the house on his credit, but also in relation to the plaintiff, who was in part but a nominal partner; and that consequently the defendant is liable to him for losses sustained by him as a partner in the old firm and a customer of the new, under the head of *old books*. But if the court should be of opinion that he did not make himself a partner by that contract to the extent contended for, then it is urged, secondly, that the contract was usurious, in as much as Millaudon stipulated for something more than ten per cent interest for advances made to the concern, and that he is bound to deduct from his account the profits he has received and the whole interest charged.

I. As to the partnership:

An agreement dated June 19th 1822, was entered into between W. & D. Flower on the one part, and Laurent Millaudon on the other, by which the latter engaged to furnish that house an advance of twenty thousand dollars, either cash or endorsements in order to enable them to pay off their old engagements. This advance was to be continued for three years. They engaged on their part to pay an interest at ten per cent on the money-advance, and one third of the profits of a new concern under the same style which was to take place on the 1st of July following, and to continue for the space of three years. To secure the

89

reimbursement of this advance they engaged to give their obligation secured by H. Flower, James Flower, J. L. Finlay and J. C. Faulkner. Articles of partnership for the new concern alluded to in this contract were entered into on the same day between W. & D. Flower and David Griffith. This latter contract is not signed by Millaudon, and it is not necessary for our present purpose to recite its particular stipulations. One article is in the following words: "a copy of this agreement signed by the parties will be furnished to L. Millaudon, and they also agree to let him have the same freedom for the investigation of the books as one of the parties."

It appears to us the parties never contemplated that Millaudon was to be viewed in the light of a partner of this house, to the extent contended for by the Plaintiff's counsel. He was to receive a certain share of profits for the risk run by him in sustaining the credit of the house by his endorsements. This participation in profits might render him liable towards third persons dealing with the firm, but it would in our opinion, be wholly inconsistent with the general tenor of the agreement, to consider him liable towards the partners themselves for any losses which would diminish the capital advanced by him. The advance made by Millaudon under this agreement was in truth a loan, and the plaintiff bound himself for its ultimate reimbursement. It is true the plaintiff was no longer to come in for profits *eo nomine*. And although he was to reside in the country when he engaged to advance the general interest of the house, the only benefit he calculated to derive from its operations was the recovery of capital due him by the former house of W. & D. Flower, with which an account was to be opened under the name of "old books." The annual balance in favor of old books was to bear an interest of ten per cent, which interest was to be paid to W. Flower, on the 1st of July of each year, and the capital to remain in the new concern. We are bound under this contract to regard the plaintiff as a partner in the new house and not a stranger, having a right to look to

*Where a third person stipulates with a commercial firm to advance a certain sum in cash or by endorsements for its support and credit, on which he is to be allowed ten per cent. interest per annum and one third of the profits for a term of years, at the end of which this sum is to be reimbursed, he will not be considered as a partner, but as having made a loan to the firm.*

Millaudon to make good to him any losses he may have
sustained.

II. As to usury:

It has been settled by various decisions of this court that whensoever a higher rate of interest than ten per cent has been agreed upon, either directly or indirectly, under whatever disguise or pretence it may be, no part of the stipulated interest can be recovered. 3 *N. S.* 191, 622. 4 *N. S.* 167, 201. 7 *N. S.* 408. 4 *La. Rep.* 542. 3 *La. Rep.* 387.

In order to ascertain whether this contract be usurious or not it is necessary to analyse it somewhat minutely. Millaudon engages to furnish the house of W. & D. Flower an advance of twenty thousand dollars, to be made either in endorsements of their notes of accommodation in the banks of New-Orleans or in cash as they may require, to be continued for the space of three years from the 1st of July 1822. On the curtailment of the notes of accommodation he engages to extend his advances to such amount as he should be relieved from the endorsments; so that the money advanced and the endorsements should always remain at twenty thousand dollars. W. & D. Flower on their part bind themselves to pay him an interest at the rate of ten per cent per annum on any or all sums of money so received by them until refunded; the interest to be settled up annually on the 1st of July. The last clause of the contract we give in the words used by the parties, to wit: "and in consideration of the sum so furnished, or to be furnished by the said L. Millaudon to the said W. & D. Flower, to wit, by the endorsements of their notes of accommodation as aforesaid, *and by* the advances of money as before mentioned, the whole amounting to twenty thousand dollars, the said W. & D. Flower will give to L. Millaudon their obligation secured by H. Flower, J. Flower, J. L. Finlay and J. C. Farnham, and also one-third part of the profits of the new establishment under the firm of W. & D. Flower which is to take place on the 1st day of July next, and to continue until the 1st day of July 1825." According to the literal tenor of this last clause of the con-

tract, one-third of the profits are to be given in consideration of the endorsements and the advance of money. It cannot be said therefore without disregarding the very words of this clause, and the only grammatical construction of which it is susceptible, that the profits were exclusively intended to cover the risk incurred by the endorsements, and that a previous part of the instrument provides for the payment of interest at ten per cent on the money part of the advances to be made. If the whole had been in money, the contract would have secured to the lender two thousand dollars as interest, and one-third of the profits besides. We cannot suppose that the loan and money would have been made for an interest of ten per cent, unless coupled with the further engagement to pay a part of the profits. The two are so blended together in this contract that we cannot separate them. But it is argued that it was optional with W. & D. Flower to take money or not; that they might have accepted of endorsements alone and then no interest would be due. This argument assumes as a principle, that if a party voluntarily engages to pay usurious interest, he is not entitled to relief. But the law annuls stipulations for the payment of usurious interest, not because they are not voluntary, but because the policy of the law prohibits them; and they are null because prohibited and not because there was any want of consent. But suppose the leaving of it to the option of the borrower amounts to nothing more than a proposition; as soon as that proposition is accepted by the borrower's signifying his option, the contract is formed. Now in point of fact the first advance made was partly in money and partly in endorsements and both interest and profits were changed for the first year. We cannot yield our assent to the reasoning which would make the same contract at one time usurious and not so at another according to to the varying state of accounts between the parties.

Where it is stipulated between plaintiff and defendant that the latter is to receive ten per cent, per annum interest on his advances to    We are of opinion that the stipulation for interest and profits in this contract was usurious, and that consequently so much of the amount claimed by defendant in reconvention as is made up of profits and interest on those advances ought

to be deducted. But we cannot without the hazard of great injustice to the parties in the present state of the accounts, proceed to establish a balance. We think the court below ought to have submitted the accounts to auditors to state an account.

and one third profits in the mercantile firm of the former, the contract will be declared usurious and no part of the profits can be recovered.

III. Among the transactions between the plaintiff personally and the defendant, there is one of which the former complains. He alleges that he received from the defendant a note of Nott & Co. for ten thousand dollars, having about two years to run, and that the defendant exacted from him usuriously his note for eleven thousand dollars payable at the same time. And he claims credit for the eleven thousand dollars as well as accruing interest. We find this item of eleven thousand dollars charged in account A, and by adding interest upon interest at the rate of ten per cent, it amounted at the time of the trial to nineteen thousand nine hundred and thirty dollars and six cents. This compound interest is not justified by any evidence in the record. Whether the difference between the amount of Flower's note and Nott's ought also to be struck out together with all accruing interest depends on the question, whether the transaction was usurious. Two facts are clearly established, to wit, that there was an exchange of notes, and that there was a difference of a thousand dollars between them. But it is left doubtful whether both notes had the same time to run; if Flower's note had a year longer to run than Nolte's, then the difference is accounted for. The evidence shows that Millaudon had two notes of V. Nolte & Co. for ten thousand dollars each; his journal shows that on the 22d June 1822, he charged himself with one of these notes, "No. 66, given to W. & D. Flower." On the same day the note of W. Flower was given for eleven thousand dollars payable about two years after. If we were bound to pronounce finally on this part of the case as it now appears in evidence, we should be inclined to think that the presumption is against the interest. But as the cause must be remanded the parties will have an opportunity to give further evidence on this item. It is in the power of the defendant to explain it.

There is another transaction of which the plaintiff complains. He alleges that two notes passed to the defendant for two thousand and seven dollars and seventy-five cents each, were credited only for the amount of two thousand five hundred and forty-nine dollars and fifty-four cents, the balance being retained as usurious interest. It does not appear in evidence what time those notes had to run. It appears from the record, there were several by the same drawers falling due at different periods, and that from two of them a large deduction was made for discount, but whether the plaintiff be entitled to a deduction for excessive discount we are unable to pronounce in the present state of the case.

A bill of exceptions was taken to the refusal of the court to allow the commercial books of the firm of W. &. D. Flower to go to the jury, after having first exhibited the contracts Nos. 1 and 2 and introduced other evidence. At first we were inclined to the opinion, that the books ought to have gone to the jury under these circumstances in support of the allegation that the defendant was a partner. But subsequent reflection has satisfied us that our first impression was incorrect and we concur with the court below that the books were inadmissible. It has been urged that the question was left to the jury, whether there was a partnership or not, and that by withholding the books, the court took this issue from the jury. The books do not purport to be those of a commercial firm, of which Millaudon was a professed partner and to have admitted them would have assumed that Millaudon was a partner of the firm of W. & D. Flower as between the partners themselves. But the fact is, the books were not offered to prove the partnership, but to show the profits or losses of a firm of which it was contended Millaudon was virtually a partner. The articles of partnership were not signed by Millaudon, and we have already expressed our opinion that he was not a partner in relation to the plaintiff; and that such does not appear to have been the original intention of the parties.

There seems never to have been a final settlement of accounts between the parties, and the defendant in his answer

avers that on such settlement the plaintiff will be largely his debtor, and he claims that balance in reconvention; the approval of accounts rendered does not in our opinion preclude the plaintiff from showing errors in the accounts. But we are unable as the case now appears before us to strike a final balance. Justice in our opinion requires that the case should be remanded for a new trial, according to the principles herein laid down.

It is therefore ordered, adjudged and decreed, that the judgment of the District Court be reversed, and that the case be remanded for a new trial, and that the appellee pay the costs of this appeal.

EASTERN DIS. June, 1834.

The approval of accounts rendered in the course of business, does not prevent the party from shewing there are errors in them on a final settlement.