LAND, J.
 

 The judgment of the court of appeal for the parish of Orleans rendered in the above consolidated cases is before us for review on a writ of certiorari obtained at the instance of Robert W. Hillcoat, a defendant in each of said cases.
 

 The plaintiff in the respective cases has sued Drennan & Hillcoat et al. as a commercial firm, and seek to recover judgments against said firm and its members in solido for the amount of open accounts for merchandise sold and delivered by plaintiffs to Drennan.
 

 The first named suit was instituted originally in section A, and the second named suit in section B, of the civil district court for the parish of Orleans.
 

 Judgment was rendered in the first suit against Drennan & Hillcoat et al. as a commercial firm, and against its members in solido; while in the second suit judgment was rendered against Drennan individually, and the suit was dismissed as to Hillcoat, on the ground that the defendants were not commercial partners.
 

 Both cases were appealed to the Court of Appeal for the Parish of Orleans. The judgment in the first suit was affirmed, and the judgment in the second suit was reversed, and it was held that defendants were commercial partners and liable in solido.
 

 Drennan purchased these goods in New Orleans in his individual name, and, at the time of said purchase, there existed a verbal agreement between him and Hillcoat, under the terms of which the goods were to be shipped to Mexico and there sold by Drennan. Hillcoat in the beginning obligated himself to furnish the necessary funds to pay all of the expenses of the trip, including freight and duties on the goods, and later consented to guarantee the payment of two accounts charged to Drennan at MarksIsaacs Company and W. B. I-Cohlman’s. Hill-coat was to be reimbursed for his advances out of the first proceeds of the first sales, and, after the payment of expenses, the profits were to be equally divided between them. The issue presented to us for decision is whether such a contract constituted a commercial partnership.
 

 The Court of Appeal announces as the law of the case the proposition that the agreement between the parties to share profits creates a presumption of partnership, and that, as this presumption was not rebutted by the special circumstances of the case, a partnership existed between Drennan and Hillcoat. In buying the goods to be disposed! of in Mexico, Drennan dealt in his own name. The evidence fails to show that Hill-coat held himself out to third persons as a member of a partnership. Consequently there is no proof in the record of partnership by estoppel.
 

 Drennan purchased these goods from various firms in the city of New Orleans, and only in two specific instances did Hillcoat guarantee the payment of the accounts. Such guarantee, obviously, does not constitute proof of a partnership. It is true that Hillcoat paid some bills with a check on an account styled “R. W. Hillcoat & Co.” Neither Drennan nor Hillcoat testify that “R. W. Hillcoat & Co.” was the firm name of any partnership existing between them.
 

 In a letter of date April 15, 1922,' written in Mexico, and addressed by Drennan to “R. W. Hillcoat
 
 &
 
 Co.,” New Orleans, La., the writer states:
 

 “I am inclosing herewith a statement regarding the disposal of the merchandise delivered to me by Mr. Luis Buenrostro, of
 
 your
 
 firm.” (Italics ours.)
 

 There appears in the statement referred! to a charge of $15, “Due from Luis Buenrostro, Export Mgr. of R. W. Hillcoat Co.”
 

 
 *483
 
 At the foot of this statement is the following note, signed by Drennan:
 

 . “The above mentioned $15 of Luis Buenrostro is for the amount he owes me for a watch. As Buenrostro is in Yucatan, and it is uncertain when I will see him, I have
 
 charged this up to your
 
 corn-puny,
 
 with whom he is connected.”
 
 (Italics ours.)
 

 In a letter of date El Paso, Tex., September 27, 1921, addressed by Drennan to “R. W. Hillcoat Co., New Orleans, La., Dear Mr.Hillcoat,” the writer advises Mr. Hillcoat of the immediate need of the sum of $900 for the payment of the balance of the duties, and states:
 

 “I have advised a number of customers in Mexico City of my early arrival there.
 
 I will he able to send the money that you have guaranteed hy Oct. 5th
 
 (the 30- day limit), though I may have to telegraph it to you.” (Italics ours.)
 

 The above correspondence shows clearly that Drennan was connected in no way as a partner with “R. W. Hillcoat Co.” The letter of September 27, 1921, written by Drennan at an unsuspicious time, in fact even before the goods had crossed the Mexican border, is clear proof that the account of W. B. Kohlman and of Marks-Isaacs, the payment of which Hillcoat had guaranteed, was not an account of any goods sold to any partnership existing between Drennan and Hillcoat, but a private purchase by Drennan on his own account, with Hillcoat as a mere security for the payment. It is admitted by the plaintiff in each of these suits that the goods were 'purchased by Drennan and charged to his individual account, and that the payment was not guaranteed by Hill-coat.
 

 There is a total absence of proof in the record that the merchandise for the Mexican trade was bought by Drennan as a common partnership stock, or that I-Iillcoat had any proprietary interest in the same. The evidence in the record plainly shows that the merchandise purchased by Drennan was his private property. The only understanding existing between Drennan and Hillcoat was that Hillcoat should be reimbursed out of the first proceeds of sale for his advances to Drennan for payment of freight and duties on goods shipped to Mexico, amounting to $2,200, and that tho profits of the venture should be equally divided. It is true that invoices of these goods were left by Drennan at the office of I-Iillcoat, and that remittances were forwarded to Hillcoat by Drennan, as the goods were sold. This condition, however, did not arise from the fact that Hill-coat participated as a principal in the management of a joint venture under an agreement to share profits, but was merely an arrangement between the parties, in order to secure to Hillcoat the payment of his advances out of the first sales of the merchandise, under the express terms of the agreement entered into originally between the parties. Necessarily, Hillcoat, in order to protect himself as to his advances, had the right to know what goods Drennan had purchased, and what sales he had made in Mexico.
 

 There is no evidence in the record that Hillcoat participated in the management of the business in Mexico, or that he kept the books in connection with that business. The proceeds of the goods sold in Mexico were not turned over to Hillcoat as a partner to be disbursed as he saw fit. In a letter of date of December 29, 1921, Hillcoat was instructed by Drennan to pay the firm of Shushan Bros. & Co. first “in the liquidation of my pending draft settlement.”
 

 "We also find in the record the following letter of date January 16, 1922, written by Drennan, and addressed to “R. W. Hillcoat Co.”:
 

 “I wish to refer to the payment of the La Valliere Co. account — this to be paid out of the money received from the Alfonso Proal draft,
 
 *485
 
 as Proal’s draft covers Ms purchase of La Valliere goods.
 

 “After further, consideration, I believe that the other factory accounts should be paid “pro rata” as draft payments come in from Mexico. In this case you
 
 will please consider rescinded the instructions given in my recent letter regarding the Shushan Bros, account.
 
 I do not think it would be fair to the others for us to pay the Shushan account first.” (Italics ours.)
 

 It is clear from this correspondence that Drennan fully recognized his indebtedness to the various firms in New Orleans as purely individual, and not as partnership obligations, and still retained his authority to direct the payments, after the remittances had been forwarded to “R. W. Hillcoat Co.,” the agent of Drennan as to such settlements. Hilleoat’s bookkeeper kept a record of his receipts and disbursements in connection with the Mexican venture on a ledger sheet entitled “Drennan Duty Account.”
 

 Drennan conducted the enterprise in his own name, and the term “Drennan
 
 &
 
 Hill-coat” was never used in the venture. Neither Drennan nor Hillcoat testify that a partnership was formed between them. Hill-coat expressly states that he had no intention of entering into a partnership, and that it was agreed that he should not be liable for any losses.
 

 Hillcoat paid only two bills of the venture out of the funds in his hands, and Drennan admitted he specifically instructed Hillcoat to make both of these payments. Drennan’s testimony, pp. 15, 16.
 

 That Drennan had some individual credit is shown by the fact that he purchased goods from plaintiffs in the cases before us without the-guarantee of Hillcoat. These goods were charged to Drennan individually, as well as the goods bought by him from Kohl-man and Marks-Isaaes Company, whose accounts were secured by Hillcoat. To hold, under this state of facts, that the presumption of partnership,' arising from a mere agreement to participate in the profits, is sufficient to establish a partnership, in the absence of intention between the parties to form a partnership, and in the absence of proof between the parties of a community of goods and proprietary interest therein, is clearly erroneous.
 

 We must be controlled by the actual contract of the parties, and cannot substitute for it or enforce, as the contract between them, a new obligation to which the parties never consented.
 

 In Flower v. Millaudon, 6 La. 697, the court said:
 

 “Where a third person stipulates with a commercial firm, to advance a certain sum in cash or by indorsement for its support and credit, on which he is to be allowed 10 per cent., interest per annum, and one-third of the profits for a term of years, at the end of which this sum is to be reimbursed, he will not be considered as a partner, but as having made a loan to the firm.”
 

 In Chaffraix & Agar v. John B. Lafitte & Co., 30 La, Ann. 631, the facts of the case are stated as follows:
 

 “In November, 1872, an arrangement was concluded between Morton, Bliss & Co., bankers, of the City of New York, and two New Orleans firms, John B. Lafitte & Co., cotton buyers, and Price, Hine & Tupper, dealers in sugar and molasses, to this effect: Price, Hine & Tupper was to buy molasses of a certain grade in their own name, to warehouse or ship it in the name of John B. Lafitte & Co., and to deliver the warehouse receipts or bills of lading to Lafitte & Co. On receipt of these commercial evidences of title and possession Lafitte & Co. were to pay Price, Hine & Tupper in cash the cost of the molasses, and the expenses of the purchase; and Lafitte & Co. were to draw on Morton, Bliss & Co. for the money. Payments were to be made to Price, Hine & Tupper only on delivery of the warehouse receipts or bills of lading to Lafitte & Co; and Lafitte & Co. were authorized to draw on Morton, Bliss & Co. only when the property was thus in the possession of Lafitte & Co. for account of Morton, Bliss & Co. Price, Hine & Tupper were to make no charge for their services; but they were to receive one-fourth, Lafitte & Co. one-fourth, and Morton, Bliss & Co. one-half of the profits; the losses to be shared in the same proportions. The names of Morton, Bliss & Co.
 
 *487
 
 and Lafitte & Co. were not to be used, and their connection with the business was not to be known, because the appearance of such heavy buyers in the market would have tended to enhance prices, and to diminish the profits of the adventure.”
 

 It was held by the court that such an agreement would not make the said firms commercial partners, even as to third persons, when it appears that they did not intend to form a partnership, and had not held themselves out to the world as partners.
 

 The court in its opinion approved, as being “in accordance with reason and common sense, equity and public policy,” the following rule as laid down by Judge Story in his Treatise on Partnership,, § 49:
 

 “In short, the true rule, ex aequo et bono, would seem to be that the agreement and intention of the parties themselves should govern in all cases. If they intended a partnership in capital stock, or in profits, or in both, then, that same rule should apply in favor of third persons, even if the agreement were unknown to them. And. on the other hand, if no such partnership were intended between the parties, then, that there should be none as to third persons, unless where the parties had held themselves out as partners to the public, or their conduct operated as a fraud or deceit upon third persons.”
 

 In Chaffraix & Agar v. John B. Lafitte & Co., page 639, above cited, the court said:
 

 “That other tests must be resorted to in addition to participation in the profits, in order to determine the question of partnership vel non. Participation in the profits is one circumstance; participation in the losses is another. It is demonstrated that participation in the profits alone is not sufficient. The parties may stipulate for a participation in the profits, and that there shall be no partnership; and they may also agree to share profits and losses, and exclude partnership, since there is, nothing in liability for losses, an incident of the contract of partnership, which gives it greater significance as a test of that relation than participation in profits. * * * Such agreements serve to fix the rights and relations of the parties with respect to each other; and the public, or third persons are not interested in or prejudiced by them, whether they are publicly avowed, or known only to the parties. The true, final, satisfactory, conclusive test is in the answer to the question: What was the real meaning and intention of the parties, as expressed in their contract, whether verbal or written? If they intended to create a partnership, they will be treated as partners inter sese and with respect to third persons; if they did not intend to create that relation, but merely to divide profits, or to share profits and losses, in a speculation or adventure, they will not be treated as partners inter sese, nor will they be liable as such. Those who hold themselves out to the public as partners, .or knowingly permit themselves to be so held out, may not, indeed, be actually partners, if they have not so intended and agreed; but they will be subject to the same liabilities as partners to those who have dealt with and given credit on the faith and in consequence of such acts.
 

 “The secret partner, and the publicly avowed partner, are equally liable, are equally partners, because in the one case and the other, it is the real intention and the contract which bind them; and the secret partner can escape liability only by the failure of the creditors to discover his true relation to the business.”
 

 It is therefore clear that the defendant Hillcoat cannot be held liable in solido with Drennan to plaintiffs as a commercial partner, merely upon a presumption of partnership based upon an agreement between the parties to divide the profits, as there was no intention upon the part of Hillcoat to enter into a partnership agreement. Nor can said Hillcoat be held liable as a secret partner in the absence of proof of his intention to create a contract of partnership with Drennan.
 

 The contract entered into by the parties is patently one to divide profits in a speculation or adventure, and not a commercial partnership. Moreover, in the absence of proof of community of goods, and of a proprietary interest on the part of Hillcoat in the merchandise bought by Drennan for the Mexican trade, there can be no contract of partnership in this case. Chaffraix & Agar v. John B. Lafitte & Co., 30 La. Ann. 642; Belden v. Read, 27 La. Ann. 104.
 

 It is therefore ordered that the judgment rendered by the Court of Appeal for the
 
 *489
 
 Parish of Orleans in the case of Julius S. Cohn & Co., assignees, Simmons Cohn & Co. v. Drennan
 
 &
 
 Hillcoat et al., No. 140941, division B, civil district court for the parish of Orleans, he annulled, set aside, and reversed. It is now ordered that the judgment of the civil district court for the parish of Orleans rendered in said case he reinstated and affirmed. It is further ordered that the judgment rendered by the Court of Appeal in the case of Shushan Bros & Co. v. Dlennan & Hillcoat et al., No. 140940, division A, civil district court for the parish of Orleans, and the judgment rendered in said case by said civil district court be annulled,' avoided, and' reversed.
 

 It is now ordered that there be judgment in said suit in favor of plaintiffs, Shushan Bros. & Co., and against defendant Ralph W. Drennan for the sum of $873.50, with legal interest from October 5, 1921, until paid, and for costs, and that the demand of plaintiff as against Robert W. Hillcoat be rejected and dismissed, at plaintiff’s costs.