## LEET v. JONES

___

(*February 15, 1932. Opinion and Decree.*)
(March 7, 1932. Rehearing Refused.)
(April 25, 1932. Writs of Certiorari and Review Refused by Supreme Court.)

___

Dart & Dart and Louis C. Guidry, of New Orleans, attorneys for plaintiff, appellee.

Ridgely Moise, of New Orleans, attorney for defendant, appellant.

JANVIER, J. On October 1, 1927, Clyde W. Leet, a public accountant, entered into a contract with Jones, Eversmeyer and Winkler, a firm of accountants composed of William B. Jones, Walter H. Eversmeyer and M. M. Winkler, under which he was employed by the firm "For one year from October 1st, 1927 to October 1st, 1928, at a guaranteed monthly salary of $250.00 per month, payable monthly and 5% of the net profits of the firm during the fiscal year ending October 1st, 1928."

At the expiration of the year fixed in the contract there was a verbal renewal for an additional year, to-wit: to October 1, 1929, and on October 1, 1929, the contract was again verbally renewed for an additional year.

During the first two years Leet received all that was due him under the contract.

As of March 15, 1930, when the contract, as last renewed, had been in effect five and one-half months, the partnership of Jones, Eversmeyer and Winkler was dissolved by consent of the three partners who, among other things, agreed that Jones should continue the business formerly conducted by the partnership, should retain the services of Leet and should assume the obligation of paying him the salary and percentage of earnings stipulated for in the original contract.

In the agreement of dissolution it was also set forth that on March 15, 1930, the net profits of the partnership were such that 5 per cent thereof amounted to $226.45.

Leet, unwilling to continue in the employ of Jones, notified him to that effect and then brought this suit to recover from Jones the said $226.45 together with certain other small amounts representing his alleged unpaid salary for a few days and certain traveling expenses.

The total amount claimed is $263.68.

Jones resists payment on several grounds, principally because he asserts that Leet, without just cause, refused to comply with his contract of employment and thus, according to the contention of Jones, not only forfeited his right to salary and earnings, but rendered himself liable to return the total amount received by him under the contract. This contention is founded on the alleged applicability to the situation of article 2750 of the Civil Code which reads as follows:

"But if, on the other hand, a laborer, after having hired out his services, should leave his employer before the time of his engagement has expired, without having any just cause of complaint against his employer, the laborer shall then forfeit all the wages that may be due to him, and shall moreover be compelled to repay all the money he has received, either as due for his wages, or in advance thereof on the running year or on the time of his engagement."

Jones, claiming that the above quoted codal provision governs the situation, has, by reconventional demand, claimed from Leet $1,754.21.

The trial court rendered judgment for

plaintiff, Leet, as prayed for and rejected, in its entirety, the reconventional demand. From that judgment Jones has appealed.

There is a dispute of minor importance as to certain of the lesser sums claimed by Leet, but in the main the facts are not in controversy. The only point of importance which confronts us is the question of whether the original partnership, when it dissolved, could assign to Jones the contract with Leet and thereby force Leet to continue in the employ of Jones. Article 2007 of the Civil Code provides in part as follows:

"All contracts for the hire of labor, skill or industry, without any distinction, whether they can be as well performed by any other as by the obligor, unless there be some special agreement to the contrary, are considered as personal on the part of the obligor, but heritable on the part of the obligee."

If then, under the contract here involved, Leet is the sole obligor it must necessarily follow that his services can be assigned by the partnership because, although personal as to Leet, the contract, under the precise terms of the said article, would be heritable, that is to say, transferable or assignable on the part of the partnership, Jones, Eversmeyer and Winkler.

In the usual contracts of hire, whether of labor or of skilled workmen or of professional men, the employee is the obligor and the employer is the obligee as contemplated by article 2007 of the Code, because the employee is obligated to furnish his services and the full obligation of the employer or obligee is complied with when he pays the salary or recompense stipulated for. Ordinarily the employer owes nothing more. But where the employee has contracted to perform services for others in the same business or profession, and is to receive not only a salary, but a percentage of the net earnings of all, the employee is interested, as are all the others, in the earnings of the entire group and in such case the obligation of each member of the group is to retain his membership therein and, by his personality and acquaintances and reputation in the community, to add to the income of all.

Thus, each of the employers in such a case is also an obligor, because each owes to the employee, not only the salary stipulated for, but also the duty of augmenting, each to the extent of his ability, the income of the entire group. If each employer is an obligor, then as to each the contract is personal and may not be assigned.

While the agreement to share profits did not necessarily make Leet a partner (Shushan Bros. & Co. v. Hillcoat, 158 La. 480, 104 So. 214) it did, at least to the extent of his interest in the profits, give him certain rights which are possessed by partners. It is contemplated in partnerships, particularly between professional men, that each will give to the partnership his skill and experience and his ability to obtain business for the firm. In entering into such an association, each member takes into consideration and is much influenced by the personal characteristics of the others and it is for this reason that the framers of our Code in the same article from which we have quoted, Civ. Code art. 2007, provided also that "Contracts of * * * partnership are mutually personal."

The thought which we have in mind was well expressed by Lord Denman in Humble v. Hunter, 12 Q. B. 310:

"You have the right to the benefit you anticipate from the character, credit and substance of the party with whom you contract."

Here, it must be presumed, that in entering into the contract Leet was moved to a considerable extent by the fact that he knew of the experience, industry and business producing ability of Eversmeyer and Winkler and, whatever may be the qualifications of Jones in these particulars, it would be manifestly unfair to Leet to force him, whether he consented or not, to forego his share of such business as may have been produced by the other members of the former firm and to rely entirely on the earning capacity of Jones.

In fact, Jones' contention that he can produce as much business as the old firm would have produced cannot even be given consideration. In discussing the effect of a contract which is personal, Judge Saunders in his Lectures on the Civil Code, cited the case of a son who, after the death of his father, undertook to perform a contract which the father had made and which was personal as to him. In stating his opinion, of which he seemed to have no doubt at all that the son could not undertake such contract, Judge Saunders said:

"The son would not be permitted to show that he was as successful as his father or that he had been all the time conducting his father's business."

See Saunders' Lectures on the Civil Code, page 412.

Counsel for Jones contends that even if Leet was justified in refusing to remain in the employ of Jones, still he was not entitled to the amount shown on March 15th, as being 5 per cent of the net earnings, because, under the contract, he was entitled to his percentage of the net earnings only as shown at the end of the fiscal year and, since, at the end of the fiscal year, to-wit, on October 1, 1930, there were no net earnings, Leet could not claim the amount which, on March 15, 1930, represented 5 per cent of what at that time were the net earnings.

It is very true that had Leet remained in the employ of the partnership or had he acquiesced in the assignment of his contract, he would not have been entitled, until the end of the fiscal year, to his percentage of the net earnings, but since by the action of the partners his contract was terminated on March 15th, it would manifestly be unfair to him to hold that he had the right to discontinue his employment, but that he had no right to withdraw from Jones the amount shown to be due him at that time and that he must leave that amount in Jones' custody subject to the possibility of loss. If he was unwilling to remain with Jones and if he was justified in deciding to leave, surely he should not be forced to leave his funds in Jones' possession.

It is also true that had Jones not assumed, so far as the other partners were, concerned, responsibility to Leet, Leet could not have held him liable for the full amount, but when Jones undertook to continue the operation of the business and agreed to take over certain assets and liabilities, among which was the obligation to pay Leet the amount due him, he thus made himself liable to Leet for the whole amount shown to be due at that time.

Whether the smaller items which are involved should be allowed to plaintiff depends upon questions of fact. We have carefully considered the evidence which was adduced in connection therewith and cannot say that the judgment rendered by our brother below is manifestly erroneous, consequently we have decided to make no alteration in his finding.

The judgment appealed from is affirmed.